148 N.J. Super. 457 (1977)
372 A.2d 1143
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANNA GADSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 21, 1977.
Decided March 10, 1977.
*459 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for appellant (Ms. Sara A. Friedman, Assistant Prosecutor, of counsel and on the brief).
Mr. Stanley C. Van Ness, Public Defender, attorney for respondent (Mr. James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant was tried for the murder of her husband. Although the defense of insanity was not pleaded, R. 3:12, certain testimony adduced during the trial raised the inference, at least in the mind of the trial judge, that defendant may have been temporarily insane at the time of the alleged offense. Accordingly, over the objection of counsel, he charged the jury on insanity and, relying on State v. Pennington, 131 N.J. Super. 1 (Law Div. 1974), instructed the jurors that their determination of that issue could be by a ten to two vote. The jury subsequently returned a verdict of not guilty by reason of temporary insanity by a ten to two vote.
The State appeals, basing its right to appeal the judgment of acquittal on the premise that it was the result of a nonunanimous verdict, and therefore was legally defective.
*460 The right of the State to appeal a criminal case is circumscribed by Art. I, par. 11 of our Constitution: "No person shall, after acquittal, be tried for the same offense. * * *." Only those judgments or orders mentioned in R. 2:3-1 may be appealed by the State, and an acquittal by a trier of the facts does not fall within the scope of that rule. State v. Sheppard, 125 N.J. Super. 332, 338 (App. Div. 1973), certif. den., 64 N.J. 318 (1973). Thus, it is well settled, that the State may not appeal from a judgment of acquittal entered by the trier of the facts at the conclusion of a trial. State v. Kleinwaks, 68 N.J. 328 (1975); Newark v. Pulverman, 12 N.J. 105 (1953); State v. McKelvey, 142 N.J. Super. 259 (App. Div. 1976); Paramus v. Martin Paint, 128 N.J. Super. 138 (App. Div. 1974).
The State contends that, regardless of the foregoing, it may appeal from an acquittal which is legally defective. It urges that the trial judge erred in inviting a ten to two verdict on the insanity issue because R. 1:8-9 requires a unanimous verdict in criminal cases.
Neither the statutes nor the Constitution of this State refers to unanimity of verdicts in criminal cases.[1] The only reference to such unanimity is found in R. 1:8-9.
In every trial by jury the verdict shall be returned by the jury to the judge in open court. The verdict shall be unanimous in all criminal actions and shall be rendered by at least five-sixths in civil actions.
There is nothing sacrosanct about a unanimous verdict in a criminal case, however. See Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Nevertheless, it is judicially settled in this State that verdicts in criminal cases must be determined by unanimous *461 vote. State v. Cordasco, 2 N.J. 189, 202 (1949); State v. Reynolds, 41 N.J. 163, 187 (1963) cert. den., 377 U.S. 1000, 84 S.Ct. 1930, 12 L.Ed.2d 1050 (1964). But the issue posed here does not involve the merits or lack of merits of a unanimous verdict per se, rather it is whether under the circumstances presented a verdict of acquittal may be permitted to be returned under instructions which apparently disregard the court rule. We answer that inquiry in the negative and in doing so have no hesitancy in concluding that both the trial judge below and the trial judge in State v. Pennington, above, have misread the opinions of our Supreme Court which construe or explain the applicable statutes.
In State v. Gibson, 15 N.J. 384 (1954), the court, in reviewing the nature and purpose of a pretrial sanity hearing under N.J.S.A. 2A:163-2, stated that that proceeding is civil in nature:
The second point of the appellant is that the trial court was in error in treating this as a civil proceeding and permitting the jury to return a verdict by a vote of ten to two. The argument is that this proceeding is a step in the criminal cause and therefore a unanimous verdict should be returned by the jury. The trial court proceeded on the assumption, and correctly we think, that a proceeding under N.J.S. 2A:163-2 is in the nature of a civil proceeding under the Constitution of 1947, Art. I, par. 9, as implemented by N.J.S. 2A:80-2, which states that in any civil cause where a jury of 12 shall be impaneled a verdict may be rendered by ten or more of the jury agreeing. * * *
The proceeding to test the sanity of a criminal defendant after indictment and prior to trial is of ancient origin and has never been considered a criminal proceeding or a step in the criminal cause. It is in the nature of an inquest trying a collateral issue. * * * (15 N.J. at 388-389)
Both State v. Pennington, above, and the trial judge here seek to extend the holding in Gibson beyond its four corners.[2] *462 Such an attempt misconceives the nature of the proceeding under N.J.S.A. 2A:163-2 and the reason for its existence.
In Aponte v. State, 30 N.J. 441 (1959), the court again had an opportunity to discuss proceedings under this statute:
A further misconception seems to be that the existence of an issue as to capacity to defend should in the ordinary course lead to a common trial of that issue and the issue of legal insanity at the time of the offense. Such is not the legislative scheme. * * * [Emphasis added]

* * * * * * * *
N.J.S. 2A:163-2 and 3 were not intended to permit an accused to by-pass the criminal trial if he is able to defend, or to entitle him to a trial run of his defense of insanity by the expedient of asserting incapacity to defend. Rather the purpose was to permit a termination of the criminal proceeding if the accused is unfit for trial. Nor does the statute require a trial of the defense of insanity at the time of the inquiry into ability to stand trial. See State v. Stern, 40 N.J. Super. 291 (App. Div. 1956). For that matter, the court need not order a trial of the defense at all. And if the accused is found to be fit for trial, the issue of insanity at the time of the crime should not be adjudged, and if both issues are tried together with a jury, the jury should be so instructed. This is especially true since, as pointed out in Gibson, supra (15 N.J., at pages 388-89), the proceeding under N.J.S. 2A:163-2 is deemed to be civil and determinable by the vote of ten jurors. [at 454, 455]
N.J.S.A. 2A:163-2 was originally enacted to fill a void which was found to exist in the criminal practice with respect to defendants who were found to be unable to stand trial by reason of present insanity. While there were procedures for an adjudication of such an individual with respect to his ability to stand trial, there was no procedure to determine the mental status of that individual at the time the crime was committed. This defect was brought to the attention of the Supreme Court and the Legislature in 1950 by the Committee on Improving the Administration of Criminal Justice appointed by the Supreme Court in that year. The pertinent part of the Committee Report reads as follows:
Existing law provides for the determination of the amenability of a defendant to stand trial in advance of the trial of the indictment. The issue of sanity is thus tried to determine whether the defendant *463 may be brought to trial, but does not involve the further question whether the defendant was insane at the time of the offense. If the defendant is found to be insane in the preliminary proceeding, he is accordingly committed and, upon the restoration of sanity, is returned to the criminal authorities for the trial of the indictment. Meanwhile, many years may have intervened and much of the evidence pertinent to the issue of insanity at the time of the offense may have been lost.
The Committee believes that provision should be made so that the preliminary trial of the issue of sanity could, in the discretion of the judge, also embrace the trial of the issue of sanity at the time of the offense. If the defendant is found to have been insane at the time of the offense, that finding would absolve him from trial on the indictment. On the other hand, if the defendant is found to have been sane at the time of the offense, that finding should not bar a subsequent plea of insanity nor be admissible in evidence against him upon the ultimate trial of the indictment. * * *
Thus it is abundantly clear both from the language of the Committee Report just quoted and the opinion in Aponte that the procedure enabling the trial court to inquire pretrial into the sanity of a defendant at the time of the commission of crime is discretionary. The procedure recognizes the need for such a determination in cases where an individual has been found unfit to stand trial because of mental illness. Such mental condition may be protracted and, as the Committee Report points out, that individual, on restoration to reason, may find himself severely handicapped with respect to a defense to the charges for which he has to stand trial.
Thus, the issue of pretrial determination of sanity at the time of commission of crime is not one of "fairness" as set forth in Pennington. The pretrial procedure available should not be employed in every case. To the contrary, it should be employed only in those cases where there is demonstrated a present inability to stand trial because of a mental condition. When the procedure established in N.J.S.A. 2A:163-2 with respect to mental condition at the time of the commission of a crime is employed, that procedure, agreeable to Gibson, is deemed civil in nature and the rule with respect to civil juries, if a jury is employed, prevails. On the other hand, where the defense of insanity is raised in a *464 criminal action, including criminal trials where the defense of insanity is raised subsequent to a pretrial finding of sanity at the time that the crime was committed, the rule as to criminal verdicts obtains and the verdict of the jury must be unanimous. We find nothing in these requirements which places any greater burden on a defendant in a criminal trial as was found to exist in Pennington. We conclude that the verdict below was the result of mistake and therefore technically illegal. Such illegality, however, does not give rise to the right of the State to appeal; this because, as a general rule, legal errors which result in an acquittal do not remove the bar to the State's right to appeal that acquittal. State v. McKelvey, 142 N.J. Super. 259 (App. Div. 1976); State v. Fiore, 69 N.J. Super. 122 (App. Div. 1961), certif. den. 36 N.J. 142 (1961). See also Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). The rule is such because of the overriding interests in avoiding double jeopardy. See Fong Foo, 369 U.S. at 143, 82 S.Ct. 671.
The State also contends that the acquittal by a ten to two verdict should be regarded as a mistrial, thereby allowing it to appeal under R. 2:3-1. We find no merit in this argument. No mistrial was declared by the trial judge, and the jury vote of ten to two cannot be found to indicate a "jury disagreement" of the magnitude compelling a mistrial. See United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034 (3 Cir.1975).
State v. Pennington, 131 N.J. Super. 1 (Law Div. 1974), to the extent it is inconsistent with this opinion, is disapproved.
Appeal dismissed.
NOTES
[1] With respect to civil actions, see N.J. Const. (1947), Art. I, par. 9; N.J.S.A. 2A:80-2.
[2] After this appeal was filed the trial judge filed a letter "Statement of Reasons" setting forth his reason for instructing the jurors that they might return a ten to two verdict with respect to insanity. The only reason given was the holding in State v. Pennington.